IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIM ISAAC,

    Plaintiff,                                         No. CIV S-04-1707 KJM

    vs.

MORGAN STANLEY DW, INC.,

    Defendant.                                    ORDER

_____/

MORGAN STANLEY DW, INC.,

    Third-Party Plaintiff,

    vs.

AMIE ISAAC,

    Third-Party Defendant.

_____/

        Plaintiff's motion to compel arbitration and stay proceedings came on regularly for hearing July 13, 2005. William Torngren appeared for plaintiff. Kenneth Mennemeier appeared for defendant. Upon review of the documents in support and opposition, upon hearing the arguments of counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

/////

I. <u>Background</u>

In 1999, plaintiff opened an account with defendant. In connection with that account, and subaccounts, plaintiff signed four different account agreements between 1999 and 2002, all of which provided for mandatory arbitration. Def't's Opp'n to Pl.'s Mot. to Compel Arbitration (Opp'n) at 1. In May 2004, plaintiff sued defendant in state court, alleging defendant allowed Amie Isaac, plaintiff's ex-wife, to withdraw more than a million dollars from plaintiff's accounts without authorization. In August 2004, defendant removed the case to this court, prior to any litigation on the merits. In September 2004, defendant answered the complaint, naming Amie Isaac as third party defendant. Between September 2004 and May 2005, the parties filed two status reports, and stipulated to initial "pre-discovery disclosures" to assess settlement possibilities. On May 24, 2005, defendant filed a motion for summary judgment, which this court has stayed. On May 26, 2005, plaintiff filed this motion to compel arbitration.

Plaintiff argues that under the Federal Arbitration Act (FAA) and the language of the account agreements, he has a right to compel arbitration and to obtain a general stay of these proceedings pending the outcome of arbitration. In his filing, plaintiff has elected arbitration before the National Association of Securities Dealers (NASD), assuming arbitration is compelled. Defendant has opposed plaintiff's motion, arguing that plaintiff has waived his right to compel arbitration under the parties' choice of New York law, but also if the Federal Arbitration Act controls.

All four of the account agreements between the parties contain substantially similar provisions regarding choice of law and arbitration. Immediately preceding the signature line of two agreements, in all capital letters, language substantially similar to the following appears:

> I UNDERSTAND THAT THIS ACCOUNT IS GOVERNED BY THE PRE-DISPUTE ARBITRATION CLAUSE [] OF THE AGREEMENT.

<u>See</u>, <u>e</u>.g., Opp'n, Ex. B at 1; <u>see also</u> <u>id</u>., Ex. E at 4. The two other agreements have similar

language, in bold face type, immediately preceding the signature line. Id., Ex. D at 1, Ex. E at 1.

With regard to choice of law generally, the agreements provide that New York law will "govern" the agreements "and their enforcement." Id., Ex. B at 6, Ex. C at 2, Ex. D at 2, Ex. E at 2. The agreements also provide that "No provision of this Agreement may be amended or waived unless agreed to in writing and signed by an authorized officer of [defendant]." Id., Ex. B at 6, Ex. C at 2 (¶ 8), Ex. D at 2 (¶ 8), Ex. E at 2.

In sections on "Arbitration of Controversies," all the agreements provide:

> You agree that all controversies between you or your principals or agents and [defendant] or its agents (including affiliated corporations) arising out of or concerning any of your accounts, orders or transactions, or the construction, performance, or breach of this or any other agreement between us, whether entered into before or after the date an account is opened, shall be determined by arbitration only before the New York Stock Exchange, Inc.; the National Association of Securities Dealers, Inc.; or the Municipal Securities Rulemaking Board, as you may elect. If you make no written election addressed to us by registered mail within five days after receiving a written demand for arbitration from us, then you authorize us to elect one of the above listed forums for you. [. . .].
>
> The law of the State of New York will apply in all respects, including but not limited to determination of applicable statutes of limitation and available remedies. The award of the arbitrator or a majority of them shall be final, and judgment on the award may be entered in any state or federal court having jurisdiction.

Id., Ex. B at 12, Ex. C at 2, Ex. D at 2, Ex. E at 4.[1] All agreements also contain "Arbitration Disclosures," as required by "Industry regulations." Id.

II. Analysis

Because the agreements between plaintiff and defendant are "contracts evidencing transactions involving commerce," as a threshold matter the agreements are subject

---

[1] In two of the agreements, the detailed arbitration provisions appear in "Section III," applicable, along with the general provisions in prior sections, to margin clients such as plaintiff. Id., Ex. B at 1, 4, Ex. E at 1, 4. In the other two agreements, the detailed arbitrations provisions are contained in one paragraph, and precede the more general provisions in the next paragraph. Id., Ex. C at 2 (¶¶ 6, 7), Ex. D at 2 (¶¶ 6, 7).

to the FAA. 9 U.S.C. § 2; <u>Chiron Corp. v. Ortho Diagnostic Sys.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000); <u>see also</u> <u>Van Ness Townhouses v. Mar Industries Corp.</u>, 862 F.2d 754, 756 (9th Cir. 1988) (securities agreements between parties "enforceable in accordance with the terms of the [FAA]"). The FAA confers on the parties involved the right to obtain an order directing that arbitration proceed in the manner provided for in a contract between them. 9 U.S.C. § 4; <u>Volt Info. Sciences, Inc. v. Bd. of Trustees</u>, 489 U.S. 468, 474-75 (1989); <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 52, 58 (1995). The court's role under the FAA is to determine (1) whether a valid agreement to arbitrate exists, and, if it does (2) whether the agreement encompasses the dispute at issue. <u>Chiron Corp.</u>, 207 F.3d at 1130. If the response is affirmative on both counts, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms. <u>Chiron</u>, 207 F.3d at 1130; <u>Volt</u>, 489 U.S. at 474-75 (FAA only confers "right to obtain an order directing that 'arbitration proceed *in the manner provided for in [the parties'] agreement.*'" (emphasis in original)).

To the extent there are ambiguities in contract terms, the common law rule of construction against the drafter applies. <u>Mastrobuono</u>, 514 U.S. at 62 (1995). Particular ambiguities as to the scope of arbitration must be construed in favor of arbitration. <u>Volt</u>, 489 U.S. at 475; <u>see also</u> <u>Moses H. Cone Memorial Hospital v. Mercury Construction Co.</u>, 460 U.S. 1, 24-25 (1983). Moreover, a document "should be read to give effect to all of its provisions and to render them consistent with each other." <u>Mastrobuono</u>, 514 U.S. at 63.

Here, neither party argues that the arbitration agreements themselves are invalid, or that the disputes encompassed by the causes of action pled in the complaint are not covered by the agreements. The sole question presented for resolution is whether plaintiff has waived his right to arbitration by filing a lawsuit in state court, and not moving to compel arbitration until approximately one year later, nine months after defendant removed the state action to this

court, and eight months after defendant answered.[2]  At oral argument the parties essentially agreed that the answer to this question turns on whether the FAA or New York law provides the standard for waiver.  Plaintiff, with primary reliance on Mastrobuono, argues that the FAA standard applies because the parties did not intend New York law to apply to waiver, and recent post-Volt Supreme Court precedent has not applied state law in analogous circumstances. Defendant, with primary reliance on Volt, argues that New York's law of waiver applies, given the parties' clear intent that it apply, expressed in the arbitration clause language indicating New York law "will apply in all respects."

      In Volt, decided before Mastrobuono, the parties to a construction contract agreed to a general choice of law provision identifying the "law of the place where the Project was located," 489 U.S. at 470; in the arbitration clause contained in the same agreement, the parties agreed that arbitration would be "decided in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. . .," id. at 470 n.1.  The Court enforced the choice of law provision as incorporating statutory rules of arbitration of California (where the project was deemed located); the California statutes included a provision for a stay of arbitration pending resolution of litigation involving third parties.  Id. at 470, 479.  The Court's decision followed a state court's interpretation of the underlying agreement as incorporating California law, which interpretation it declined to review.  Id. at 476 ("assuming the choice-of-law clause meant what the Court of Appeal found it to mean, . . ."); see Wolsey v. Foodmaker,

---

[2] The parties agree that it is for this court to determine waiver, without clearly identifying the source of the court's authority for doing so, and despite the apparent broad scope of arbitration provided for by the account agreements, which could be read as contemplating that an arbitral panel resolve all disputes, including as to waiver.  See, e.g., Opp'n, Ex. B at 6, 12, Ex. C at 1-2, Ex. D at 1-2, Ex. E at 2, 4.  Given the parties' agreement that this court is vested with authority to resolve their dispute as to waiver, and therefore their apparent agreement either that their agreements do not contemplate arbitration of the waiver question or their mutual limited waiver of the right to arbitrate waiver, as well as Ninth Circuit precedent in which courts have proceeded to resolve waiver in analogous circumstances, the court proceeds to resolve waiver here.  If any other authority is required for the court's determination, it may be found in the court's inherent authority to manage its docket.  Atchison, Topeka and Santa Fe Ry. Co. v. Hercules Inc., 146 F.3d 1071, 1074 (9th Cir. 1998).

1  Inc., 144 F.3d 1205, 1212-13 (9th Cir. 1998).  Where no state court previously has interpreted

2  an agreement, as here, the Ninth Circuit instructs that Mastrobuono controls.  Wolsey, 144 F.3d

3  at 1212-13.

4          In Mastrobuono, the Court construed two provisions of an agreement, one

5  providing that the agreement would "be governed by the laws of the State of New York," and

6  another, located in the same paragraph of the agreement, providing that "'any controversy shall

7  be settled by arbitration' in accordance with the rules of the [NASD, et al.]."  514 U.S. at 58.

8  The question before the Court in Mastrobuono was whether these provisions included or

9  excluded claims for punitive damages.  Lower courts had held that inclusion of the New York

10  choice of law clause precluded an award of punitive damages by an arbitral panel, because New

11  York law does not allow punitive damages in arbitration.  The Supreme Court reversed, after a

12  close review of the language of the agreement, construing ambiguous language against the

13  drafter (the respondent securities brokerage firm), and reading the agreement as a whole "to give

14  effect to all its provisions and to render them consistent with each other."  Id. at 61-64.  The

15  Court concluded that "the best way to harmonize the choice-of-law provision with the

16  arbitration provision is to read 'the laws of the State of New York' to encompass substantive

17  principles that New York courts would apply, but not to include special rules limiting the

18  authority of arbitrators."  Id. at 63-64.

19          While Volt and Mastrobuono establish certain controlling principles, neither case

20  addresses an agreement's inclusion, as here, of both a general (New York) choice of law

21  provision, and a separate arbitration provision that specifies both the application of state law

22  (New York) and the conduct of the arbitration before a private financial regulatory services

23  provider such as NASD.

24          In this case, given that the parties' agreement provides that New York law will

25  "govern" the agreements and "their enforcement," this court initially applies New York

26  principles of contract construction to determine the intent of the parties' inclusion of the

separate general choice of law clause, as well as the identification of New York law in the arbitration clause.  Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941) (choice of law rules of forum court's jurisdiction apply); General Signal Corp. v. MCI Telecom Corp., 66 F.3d 1500, 1506 (9th Cir. 1995) (under California choice of law rules, federal court applies law designated by contract); see also Wolsey, 144 F.3d at 1210 ("In construing an arbitration agreement, courts must 'apply ordinary state-law principles that govern the formation of contracts.'" (citation omitted)).  As a threshold matter, New York law recognizes the familiar principle that "the intent of the parties governs" with regard to particular contract provisions. Battery Associates, Inc. v. J & B Battery Supply, Inc., 944 F. Supp. 171, 176 (E.D.N.Y. 1996) (citing to state law).  A contract "should be construed so as to give full meaning and effect to all of its provisions."  Id.  If the "plain meaning" of contract terms is ambiguous, meaning that it is "reasonably susceptible of more than one interpretation" as determined with reference to the contract alone, Burger King Corp. v. Horn & Hardart Co., 893 F.2d. 525, 527 (2d Cir. 1990), examination of extrinsic evidence or resort to other general principles of contract construction is appropriate.  Id. at 527; Consolidated Gas Supply Corp. v. Matula, 345 N.Y.S. 2d 206, 207-08 (N.Y. App. Div.), aff'd, 369 N.Y.S.2d 698 (1973).

       Reading the instant agreements to give effect to all their terms leads to the conclusion that the agreements were intended to ensure arbitration of all disputes under all circumstances as the sole procedural remedy.  Each agreement includes repeated references to arbitration, and contains the disclosures required for an agreement to arbitrate to be enforceable. Two agreements specifically state that the covered account "IS GOVERNED BY THE PRE-DISPUTE ARBITRATION CLAUSE . . ."  All of the agreements include reference to the requirement of arbitration directly above the signature line, and also strictly limit grounds for waiver of any provision to circumstances in which it is "agreed to in writing and signed by an authorized officer of [defendant]."  This latter provision appears to contemplate that waiver would be requested by the client, in this case plaintiff, and not defendant; in any case, it seems

to make clear that waiver of any term of the agreement is available only if both parties expressly agree at the time waiver becomes an issue.[3]

In context, then, the parties' separate statement that New York law "governs" the agreements and their "enforcement," while not entirely clear on its face, signals that the intended application of New York law in this instance is directed to construction of the agreement and its affirmative enforcement only. The choice of law provision within the arbitration clause provides that New York substantive law is to be applied by the arbitral panel, with procedural rules for the arbitration provided by NASD or a sister organization. See Mastrobuono, 514 U.S. at 63-64; Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974) ("An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute."); see also Mayo v. Dean Witter Reynolds, Inc., 258 F. Supp. 2d 1097, 1104 (N.D.Cal. 2003) (construing identical clause in manner proposed here).[4]

That the agreements can be read in this way demonstrates, at the very least, an ambiguity created by inclusion of a separate, stand-alone general choice of law clause. Other readings are: that the separate clause is intended to provide for the application of New York waiver principles prior to a referral to arbitration (although this construction does not explain the agreements' inclusion of express limits on waiver); or that the clause reenforces the choice of law provision in the detailed arbitration section of each agreement, such that New York law

---

[3] Defendant does not argue -- and it would strain credulity if it did -- that its opposition to the pending motion to compel satisfies the agreements' requirements of a "writing" consenting to waiver signed by an "authorized officer."

[4] While the court in Mayo did not directly resolve the impact of inclusion of a general choice of law clause separate from a choice of law clause in an arbitration clause, the underlying agreement in Mayo includes language identical to the agreements at issue in this case. See Mayo v. Dean Witter Reynolds, Inc., Case No. C-01-20336 RMW (N.D. Cal.), Docket No. 24, Ex. C; Fed. R. Evid. 201 (providing for judicial notice of such documents). Although the published Mayo decision also does not resolve a motion to compel, a motion to compel brought by defendant was granted in the course of that litigation. See Mayo, 258 F. Supp. 2d at 1099 (syllabus).

provides the substantive law to be applied by the arbitral panel (although this construction does not explain why a separate choice of law clause is included). Here, where defendant bears the burden and the record contains no extrinsic evidence showing plaintiff's intent at the time of signing the agreements that the New York standard of waiver would apply if plaintiff ever initiated litigation, such an ambiguity must be resolved against the defendant. Because the agreements do not expressly state that pre-arbitration questions of waiver are subject to New York law, the FAA supplies the standard for waiver.

In this circuit, a party seeking to prove waiver of the right to arbitrate under the FAA must demonstrate (1) knowledge of an existing right to arbitrate, (2) acts inconsistent with that existing right, and (3) prejudice to the party opposing arbitration resulting from the inconsistent acts. Britton v. Co-op Banking Group, 916 F.2d 1405, 1412 (9th Cir. 1990). A party arguing waiver "bears a heavy burden of proof." Id. Here, the third prejudice prong is dispositive.

Although defendant has answered the complaint, and participated in the filing of two status reports, it has not been forced by plaintiff to respond to discovery or briefing on the merits of the case. See United Computer Systems, Inc. v. AT&T Corp., 298 F.3d 756, 765 (9th Cir. 2002) (holding no prejudice where defendant spent considerable amount of money in state and federal proceedings, but extent of federal court proceedings involved a motion to dismiss).[5] Defendant's own conduct of limited third party discovery cannot be held against plaintiff, and information derived through such discovery may be useful in arbitration or in this action once

---

[5] Defendant argues United Computer is distinguishable because in that case plaintiff preserved his right to seek arbitration in the initial complaint. See United Computer, 298 F.3d at 760. Here plaintiff's attorney has declared that he asserted plaintiff's demand for arbitration upon substituting into this case, approximately four months after the answer was filed; defendant declined the demand three months latter. Declaration of William P. Torngren (Torngren Decl.) ¶ 3. Plaintiff's attorney also represents that his client did not have copies of the agreements he had signed until defendant filed them in opposition to the motion to compel. See id. ¶ 12. In any case, the "bare fact" of plaintiff's failing to plead a right to arbitration in the initial complaint does not support a claim of waiver without a showing of prejudice. Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 698 (9th Cir. 1986).

resumed. Cf. Fisher, 791 F.2d at 697. To the extent defendant has the right, ultimately, to recover against Ms. Isaac as the third party[6] it brought into this matter, that right has been preserved, and can be pursued following arbitration through a lifting of the stay and an action for indemnity. Defendant will not be prejudiced by a requirement that it participate in arbitration. See generally Sovak v. Chugai Pharm. Co., 280 F.3d 1266, 1270 (9th Cir. 2002) (no waiver where no showing made of prejudice as a result of plaintiff's delay in moving for arbitration and its successful motion to dismiss second amended complaint for failure to state a claim); Britton, 916 F.2d at 1412-13 (9th Cir. 1990) (no waiver where party arguing waiver refused to arbitrate and incurred costs in litigation as a result); cf. Van Ness, 862 F.2d at 759 (securities brokerage waived right to arbitrate when it actively litigated a matter through initial pleading and motion practice stages, and approved a pretrial conference order before seeking arbitration more than two years after action filed); Hoffman Construction Co. v. Active Erectors and Installers, 969 F.2d 796 (9th Cir. 1992) (waiver found where waiving party, having been advised by court that all claims were arbitrable, filed suit in state court and pursued state litigation including discovery to final judgment before trying to bring related RICO claim in federal court).[7]

---

[6] Ms. Isaac has consented to arbitration proceeding, according to plaintiff's counsel. Torngren Decl., ¶ 3.

[7] Despite the parties' position on the question, it does not appear plaintiff has waived his right to compel arbitration under New York's waiver standard, given the limited proceedings to date. New York courts do appear to articulate a stronger waiver standard, suggesting they are more likely to find waiver once a complaint has been filed and answered. See Sierra Telcom Services, Inc. v. Ericsson Business Communications, 1993 WL 322805, *6 (S.D.N.Y. 1993) (citing to Chatham Shipping Co. v. Fertex Steamship Co., 352 F.2d 291 (2d Cir. 1965)). In determining waiver, however, the courts effectively focus on prejudice, in the form of a party's degree of participation in litigation. Cf. id. at *7. In particular, in the cases cited by defendant, the waiving party has engaged in litigation activity well in excess of mere filing of an initial pleading so as to support a finding of waiver. Cf. Sherrill v. Grayco Builders, Inc., 64 N.Y.2d 261, 270-74 (1985) (waiver followed completion of depositions); DeSapio v. Kohlmeyer, 35 N.Y.2d 402, 406 (1974) (finding waiver after defendant interposed cross-claim and procured deposition); Johanson Resources, Inc. v. LaVallee, 706 N.Y.S.2d 266, 269-70 (N.Y. App. Div. 2000) (finding waiver where plaintiff commenced two actions, initiated discovery in the first action and moved to compel discovery in the first action before and while trying to compel

Arbitration will be compelled before NASD, as elected by plaintiff. A general stay of these proceedings will be ordered pending completion of arbitration. 9 U.S.C. §§ 3, 4; Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985); Chiron Corp., 207 F.3d at 1130.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to compel arbitration is granted. Arbitration shall proceed before NASD.

2. This action is stayed. All pending motions are dropped from calendar. The parties shall notify the court within ten days of the completion of arbitration proceedings and the Clerk of Court is directed to administratively close this action pending such notification.

DATED: October 17, 2005.

_____
UNITED STATES MAGISTRATE JUDGE

isaa1707.mtcompelarbitration

---

arbitration); Charitable Promotions v. Anka, 396 N.Y.S.2d 228, 231 (N.Y. App. Div. 1977) (finding waiver where plaintiff not only filed suit, but sought and received affirmative relief in the dismissal of a counterclaim).